UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AXIS INSURANCE COMPANY a/s/o ZOLL MEDICAL CORPORATION and ZOLL SERVICES LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>BARRACUDA NETWORKS, INC. and SONIAN INC.,<br><br>    Defendants,<br><br>v.<br><br>AXIS INSURANCE COMPANY a/s/o FUSION LLC,<br><br>    Rule 20 Parties. | Civil Action No. 1:20-cv-11997-NMG<br>**[LEAVE GRANTED May 21, 2024]** |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR**
<u>**SUMMARY JUDGMENT**</u>

Defendants Barracuda Networks, Inc. and Sonian, Inc. (collectively, "Barracuda") submit this reply brief in support of their motion for summary judgment [Dkt. No. 173]. This reply addresses legal and factual inaccuracies argued by Plaintiff Axis Insurance Company ("Axis") in its opposition [Dkt. No. 181].

A. <u>Equitable Indemnification Requires a Special Relationship Between the Indemnitor and Indemnitee that Creates Liability by Operation of Law.</u>

Axis argues, incorrectly, that a putative indemnitor does not need to establish a special relationship with the indemnitee to be entitled to equitable indemnification. Equitable indemnification, "is a common-law right available to one who is without fault, [and] compelled by operation of law to defend himself against the wrongful act of another." *Psychemedics Corp. v. City of Bos.*, 486 Mass. 724, 738 (2021) (citation omitted). This means that the party seeking indemnification was "vicarious[ly] or formal[ly]" liable for the putative indemnitor's conduct. *Econ. Eng'g Co. v. Com.*, 413 Mass. 791, 794 (1992).

Formal or vicarious liability, however, does not arise from all relationships. *Ruel v. Liberty Sec. Servs., Inc.*, 2010 WL 4103716, at *2 (D. Mass. Oct. 18, 2010) (noting where there "was no agency relationship among the three joint tortfeasors … vicarious liability did not arise … in the strict legal sense."). Instead, vicarious liability is "[l]iability that a supervisory party bears for the actionable conduct of a subordinate or associate … **because of the relationship** between the two parties." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 292 n.4 (D. Mass. 2013) (quoting *Black's Law Dictionary* 927 (7th ed. 1999) (emphasis added)).[1] Thus, vicarious liability arises where a legal relationship between the parties imputes liability by law on the party that did not commit the harmful conduct. Despite this clear case law, Axis argues that "[t]here simply is no authority for

---

[1] *See also Elias v. Unisys Corp.*, 410 Mass. 479, 481 (1991) (Vicarious liability "arises by operation of law and is only derivative of the wrongful act of the agent."); *Karcher v. Burbank*, 303 Mass. 303, 305 (1939) (Vicarious liability "is imputed to it by a rule of law").

1

the proposition that tort-based equitable indemnification requires the tortfeasor and the injured party to have a 'special relationship,' and Barracuda has identified none." [Dkt. No. 181 at 9]. Barracuda has done so, and points to additional authority in this reply.

Importantly, in *Richardson v. Keolis Commuter Servs., LLC,* the court found that the party seeking equitable indemnification must first meet its threshold burden to "establish a relationship with the potential indemnitor that would give rise to vicarious or derivative liability." 2019 WL 13437843, at *6 (D. Mass. June 17, 2019) (citation omitted). In other words, "[t]he principles of derivative and vicarious liability are **necessary to sustain** a common-law indemnity claim." *Larson v. Landvest, Inc.*, 2005 WL 1812471, at *6 (Mass. Super. June 3, 2005) (citing *Elias,* 410 Mass. at 481) (emphasis added). Likewise, the Massachusetts Appeals Court in *Fraco Prod., Ltd. v. Bostonian Masonry Corp.*, 84 Mass. App. Ct. 296, 300 (2013) reviewed the history of equitable indemnification in Massachusetts and the type of relationships necessary to sustain a claim. It held where there is "'no evidence that the relationship between [potential indemnitee and indemnitor] is a special relationship carrying with it an obligation to indemnify the third parties" no right to indemnification exists. *Id.* at 302-03 (citation omitted). *See also Germinara v. People's Comprehensive Mortg., LLC*, 2019 WL 13470063, at *46 (Mass. Super. May 13, 2019) (finding "no 'special relationship' existed between [potential indemnitee and indemnitor] warranting common law indemnification.").

Given this bevy of case law, courts routinely dismiss claims for equitable indemnification where the relationship between the parties does not allow for vicarious liability. As the court stated in *Larson*:

> Landvest's indemnity claim fails because nothing in the summary judgment record supports the existence of such a relationship between Landvest, [] and Scheier… The parties do not stand in an agency relationship, nor do they fit any alternative classification, that creates derivative liability.

2

2005 WL 1812471, at *6 (collecting cases and authorities). *See also Wade v. Touchdown Realty Grp., LLC*, 386 F. Supp. 3d 56, 67 (D. Mass. 2019)[2] (granting summary judgment because "[t]he undisputed facts establish that there was no relationship between Defendants and Third-Party Defendants that could give rise to vicarious or derivative liability."); *Walter & Shuffain, P.C. v. CPA Mut. Ins. Co. of Am. Risk Retention Grp.*, 660 F. Supp. 2d 116, 126 (D. Mass. 2009) (dismissing claim for equitable indemnification where party seeking indemnification "has not alleged any facts establishing a relationship between the parties that would give rise to vicarious or derivative liability"); *Chapman v. Bernard's Inc.,* 198 F.R.D. 575, 579 (D. Mass. 2001) ("Bernard's is not an agent of [the co-defendant], nor does it have a relationship with that co-defendant from which it could be held vicariously or derivatively liable.... Accordingly, Bernard's is not entitled to indemnification...."); *Medeiros v. Whitcraft*, 931 F. Supp. 68, 76 (D. Mass. 1996) (granting summary judgment because "[t]here quite simply is no relationship between the third-party plaintiffs and the third-party defendant, i.e., agent and principal, such as would give rise to any vicarious or derivative responsibility one for the other."); *Ries v. Capone Iron Corp.*, 2015 WL 9412517, at *5 (D. Mass. Dec. 22, 2015) (granting summary judgment where "the parties have not identified any evidence to suggest that Capone and D&S had a relationship that could have created vicarious liability, such as a manufacturer-retailer or principal-agent relationship.").[3]

---

[2] Axis claims that the *Wade* related to implied contractual, not common law, indemnity. Not so. The court specifically addressed the "Third-Party Defendants' argu[ment] that common law indemnification is inapplicable in this case." *Wade,* 386 F. Supp. 3d at 67.

[3] Massachusetts trial courts have also dismissed equitable indemnification claims on these grounds. *Germinara*, 2019 WL 13470063, at *46; *Russo v. Shannon*, 2011 WL 9521220 (Mass. Super. Dec. 29, 2011) (granting summary judgment because party seeking indemnification could not prove that it "would be exposed to derivative or vicarious liability"); *Brooks v. Bornstein*, 2006 WL 933407, at *4 (Mass. Super. Mar. 13, 2006) (denying indemnitee's motion for summary judgment because "the parties do not stand in a vicarious or derivative relationship giving rise to a common- law right to indemnification").

Here, Axis does not argue, nor has it submitted any evidence, that Zoll's relationship with Barracuda is the type that creates vicarious liability. [Dkt. No. 181 at 9-10]. Instead, it argues that for Axis to be entitled to equitable indemnification from Barracuda "it suffices that Barracuda's negligence proximately caused [Zoll's] loss, irrespective of the nature of the parties' relationship to each other." *Id.* at 10. This is legally wrong. Axis, as the assignee of Zoll's claim, must show that Zoll's relationship with Barracuda caused Zoll to be vicariously liable for Barracuda's conduct. It has not and cannot do so. Indeed, in Zoll's own words, it "never had a business relationship with Barracuda." *See* Ex. 1, *Zoll Medical Corp. v. Axis Insurance Co., et al.* 24-cv-11210-PGL *Complaint*, ¶ 26 (filed on May 6, 2024).[4] And Axis admits that Barracuda was unaware that Zoll was a customer or that it was storing Zoll's sensitive data. [Dkt. No. 182, ¶¶ 21, 60]. Without a legal relationship between Zoll and Barracuda that created vicarious liability, Axis's claim for equitable indemnification fails as a matter of law.

B. <u>Axis Cannot Establish That It Was "Blameless" or was "Exposed to Liability" by Barracuda's Conduct</u>

Massachusetts law requires that the party seeking indemnification be: (1) "blameless," *Ferreira v. Chrysler Grp. LLC*, 468 Mass. 336, 344 (2014), and (2) "exposed to liability because of that negligent act" of another. *Rathbun v. W. Massachusetts Elec. Co.*, 395 Mass. 361, 364 (1985). Since Axis claims that Barracuda's negligence caused harm to Zoll's customers for which Zoll was liable, Axis must prove that Barracuda was legally negligent. Axis cannot do so because it has not and cannot identified any duty of care owed from Barracuda to third parties whose

---

[4] This Court may take judicial notice of the contents of pleadings. *See Airframe Sys., Inc. v. Raytheon Co.*, 520 F. Supp. 2d 258, 262 (D. Mass. 2007). Furthermore, this Court may consider the truth of this statement in connection with Barracuda's motion for summary judgment. As Zoll will be called as a witness at trial (it is subject to Rule 45 in this District) it can testify as to the contents of the document and will be subject to cross examination. Fed. R. Civ. P. 56 (Court may consider the "material is admissible as presented or to explain the admissible form that is anticipated.") (2010 Advisory Committee Notes). *See also Edwards v. Granite Telecommunications, Inc.,* 2022 WL 974049, at *2 (D. Mass. Mar. 31, 2022) (reviewing hearsay at summary judgment where witness could testify to the contents of the document at trial).

unencrypted personal health information ("PHI") Zoll placed in Barracuda's archiver, unbeknownst to Barracuda. *See* [Dkt. No. 182, ¶¶ 21, 60]. Without a duty, Axis cannot establish Barracuda's predicate negligent conduct for which Zoll was liable by operation of law and which it now seeks equitable indemnification. *Gorfinkle v. U.S. Airways, Inc.*, 431 F.3d 19, 23 (1st Cir. 2005) ("Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff."). Furthermore, the West Virginia class action, for which Barracuda seeks indemnification for the costs of defending and settling, asserted direct claims against Zoll for violating its own policies, failing to secure its data, and failing to train its employees. *See* Ex. 2, *Class Action Compl.*[5] Since Zoll was liable for its own conduct in the West Virginia class action, it cannot shift the cost of that conduct to Barracuda through equitable indemnification. *Medeiros*, 931 F. Supp. at 76.

Furthermore, assuming *arguendo* that Barracuda was negligent, Axis argues that the Court should overlook Zoll's own negligence. "Where multiple parties are negligent indemnification is inappropriate." *Samos Imex Corp. v. Nextel Commc'ns, Inc.*, 20 F. Supp. 2d 248, 252 (D. Mass. 1998). Despite, Axis's contention that Barracuda's conduct was the sole cause of the data breach "a … loss need not have only one proximate cause; there can be multiple concurrent proximate causes." *Kiribati Seafood Co., LLC v. Dechert LLP*, 478 Mass. 111, 120 (2017). Axis disregards this principle and asks the Court to bypass its negligent conduct in failing to appropriately safeguard its patients' PHI. *Dittman v. UPMC*, 196 A.3d 1036, 1048 (Pa. 2018) (finding defendant had a duty of care to protect personal data where defendant "undertook the collection and storage

---

[5] The allegations include that: (1) "[Zoll] fail[ed] to implement and follow basic security procedures; such as device encryption…", (Ex. 1, *Class Action Compl.* ¶ 8); (2) "[Zoll's] policies and procedures failed to adhere to reasonable and best industry practices in safeguarding protected health information and other Sensitive Information" (*id.* at ¶ 29); and (3) "[Zoll] failed to implement and maintain reasonable security procedures, employee supervision policies, device encryption policies, and practices appropriate to the nature and scope of the information compromised in the data breach" (*id.* at ¶ 35).

5

of their requested sensitive personal data without implementing adequate security measures to protect against data breaches, including encrypting data properly…"). Indeed, if Zoll encrypted the email attachments containing its patients' PHI that were exposed in the data breach, the PHI would have been protected. [Dkt. No. 175 ¶¶ 24; 77]. For Zoll to claim that its initial mishandling of its patients' PHI was not a "reasonably foreseeable" "substantial factor in bringing about harm and the injury" ignores reality. *Napier v. F/V Deesie, Inc.*, 454 F.3d 61, 68 (1st Cir. 2006). Because Zoll participated in the negligent conduct that caused the exposure of its patients' PHI, Axis is not entitled to equitable indemnification from Barracuda.

Furthermore, to the extent that Axis claims that it is entitled to indemnification because of the large disparity in fault between Barracuda and Zoll, the argument fails. While Massachusetts law has recognized that indemnity "may be allowed between negligent parties where there is a great disparity between the nature and extent of their respective conduct" the SJC has limited this line of recovery to "cases of constructively negligent landowners and municipalities." *Stewart v. Roy Bros. Inc.,* 358 Mass. 446, 458 (1970) (citation omitted). *Accord Fraco*. 84 Mass. App. Ct. at 305 ("[A] review of the cases cited in *Rathbun* [for the principle of joint tortfeasor indemnification] reveals only one case, more than a century ago—before the existence of statutory contribution and workers' compensation—in which the court allowed indemnification to one of two joint tortfeasors based on differing degrees of fault."). Furthermore, the SJC in *Rathbun* explained that:

> An adjustment of common law indemnity principles to place all the loss on the more negligent of two tortfeasors would not be an improvement, and for us to lay down a common law rule of indemnification based on relative fault … would seem to intrude on the apportionment rule of the contribution statute.

395 Mass. at 365 n.4. Given *Rathbun*'s statement, the *Fraco* court noted that the viability of the theory permitting indemnity between joint tortfeasors can be "fairly questioned," and reiterated that this theory of recovery "would seem functionally indistinguishable from contribution based

6

on degree of fault, an approach the Legislature expressly precluded in G.L. c. 231B, § 2(*a* )." *Fraco*, 84 Mass. App. Ct. at 305.[6] Even if this proportionate liability theory were applicable as between Zoll and Barracuda, Axis has not shown that Zoll and Barracuda's relationship was "exceptional" to allow for indemnity between joint tortfeasors. *Rathbun*, 395 Mass. at 364. Accordingly, Zoll's degree of fault, as compared to Barracuda's, is irrelevant for purposes of indemnification. All that matters is that Zoll contributed to the exposure of the PHI. It did so by improperly securing its patients' data. As a result, Axis is not entitled to indemnification.

    C. <u>The Court May Consider Zoll's Internal Policies, Emails, Presentations and The Third-Party Reports Generated by Consultants Hired by Zoll.</u>

Axis has made evidentiary objections to certain documents relied upon by Barracuda in its motion for summary judgment. It argues that the Court cannot consider Zoll's 2013 and 2018 IT policies, (Dkt. Nos. 176-13; 176-14) and Zoll's internal email and presentation regarding the data breach (Dkt. Nos. 176-20; 176-21) because they are not authenticated. Axis also argues that the Court cannot consider the third-party HIPAA audits (Dkt. Nos. 176-16; 176-17; 176-18; 176-19) and Kroll's draft data breach report[7] because they are both unauthenticated and hearsay. Axis is mistaken. The Court may consider these exhibits at summary judgment.

In 2010, Rule 56 was amended to lessen the standards for evidence the Court may consider at summary judgment. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 418 n.11 (1st

---

[6] Barracuda acknowledges in *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 3 (1sr Cir 1982) that the First Circuit stated that equitable indemnification applies to shift the loss between the more guilty of two tortfeasors. However, *Araujo* does not cite Massachusetts law for this proposition. Instead, *Araujo* appears to be a maritime case invoking maritime law and cites a maritime case from the Second Circuit for its equitable indemnification elements. *See Id.* (citing *Zapico v. Bucyrus-Erie Co.,* 579 F.2d 714, 716 (2d Cir. 1978)). Regardless, *Araujo* predates *Rathbun*'s statements that indemnify between joint tortfeasors encroaches upon statutory contribution and *Fraco*'s affirmation of this principle. Accordingly, this Court should follow *Fraco*'s analysis. *Fid. Union Trust Co. v. Field,* 311 U.S. 169, 177–78 (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question").

[7] This document is filed as an attachment to the affidavit of Michael R. Stanley. *See infra n.* 8.

7

Cir. 2017) (noting that after 2010 amendments to Rule 56 actual "'authentication' is no longer required"). Notwithstanding the questionable need to authenticate exhibits at summary judgment, courts recognize the "generally accepted principle that [d]ocuments produced in discovery are deemed authenticated." *Fareed v. Cent. Rivers Power MA, LLC*, 2021 WL 3634158, at *5 (D. Mass. Aug. 17, 2021). Indeed, "when a party in response to discovery requests points to a document that appears on its face to be a business record of the producing party, the other parties should be able to treat the document as authentic unless someone offers some reason to think otherwise…" *Joseph v. Lincare, Inc.*, 989 F.3d 147, 156–57 (1st Cir. 2021). Here, Zoll's IT policies, emails and presentations, were produced by Axis after obtaining them from Zoll, bear Zoll Bates labels, and Axis does not contest their source. Thus, they are authenticated through their production.[8] Finally, for the Court to consider the documents at summary judgment, Barracuda is simply required to explain how the documents would be in admissible form at trial. Fed. R. Civ. P. 56 (2010 Advisory Committee Notes). Here, Zoll can authenticate the third-party HIPAA audits it received from its auditors (as can the auditors themselves) as well as its internal policies, emails, and presentations. For its part, Kroll can authenticate its draft report.[9] *See* Fed. R. Evid. 901. Each of these parties can and will be called at trial.

Likewise, Plaintiff contends that the third-party HIPAA audits are hearsay and therefore cannot be considered at summary judgment. *First*, pursuant to Fed. R. Evid. 803(6), the HIPAA audit reports are admissible as an exception to the hearsay rule for regularly conducted business records. *See Philadelphia Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 190 (3d Cir.

---

[8] To the extent formal authentication of the documents is required, "[a]n attorney is an appropriate source to authenticate documents *received* in discovery." *Tsai v. McDonald*, 2017 WL 3526252, at *12 (D. Mass. Aug. 16, 2017) (collecting cases). Barracuda now formally authenticates the documents as documents produced in discovery. *See* Aff. of Michael Stanley.

[9] The Court can consider the Kroll report at summary judgment as the contents of the report will be, and have already been, reduced to testimony from a witness with knowledge. *See* Ex. I, *Ackerman Deposition*.

2016) (audit report made by third party state agency was admissible under Fed. R. Evid. 803(6) where "the audit was made and kept in the ordinary course of business"); *United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (same).  Here, Zoll has admitted that it regularly hired third-party auditors "roughly every 18 months" to assess its HIPAA compliance and issue HIPAA audit reports for Zoll.  *See* [Dkt. Nos.175; ¶ 37; 182, ¶ 37].  Therefore, the Court may consider the reports at summary judgment under Fed. R. Evid. 803(6).  *Second*, even if the audits were inadmissible hearsay, Barracuda offers them for additional non-hearsay purposes, such as notice and knowledge that the auditors advised Zoll that its PHI was not properly protected.  Fed. R. Evid. 404(b); *Sabel v. Mead Johnson & Co.,* 737 F. Supp. 135, 140 (D. Mass. 1990) (transcript of meeting could not be offered for truth but "could possibly be admitted for non-hearsay purposes" including knowledge that medication's "warnings were inadequate").  Here, the HIPAA reports show that Zoll was informed three times by its auditors that its security measures in place for its HIPAA protected PHI were inadequate.  Thus, the reports can be considered for this purpose, at a minimum.

    D.  <u>Axis Misapplies Massachusetts Waiver and Equitable Estoppel Principles.</u>

Axis argues that Barracuda's silence regarding its enforcement of the OEM Agreement's condition precedent constitutes waiver.  To impliedly waive a contractual provision, Axis must have evidence of Barracuda's "clear, decisive, and unequivocal conduct" to waive the condition precedent requirements in the OEM Agreement.  *KACT, Inc. v. Rubin,* 62 Mass. App. Ct. 689, 695 (2004).  Given this high standard, "it is doubtful that mere silence could satisfy [the] burden of establishing clear, decisive, and ***unequivocal*** conduct" to support waiver.  *Dunkin' Donuts Inc. v. Panagakos*, 5 F. Supp. 2d 57, 61 (D. Mass. 1998) (emphasis in original).  Aside from the mere passage of time, which resulted from Barracuda having no knowledge that Fusion LLC ("Fusion")

9

breached the condition precedent[10], Axis presents no evidence of waiver. *Specialty Retailers, Inc. v. Main St., NA Parkade, LLC*, 2011 WL 13274191, at *4 (D. Mass. June 15, 2011) (stating while "[s]ilence and/or delay may have been insufficient, standing alone, to constitute waiver" waiver was appropriate given parties' conduct). Without any evidence of Barracuda's waiving the condition precedents in the OEM Agreement, summary judgment is appropriate.[11]

Finally, equitable estoppel does not save Axis's breach of contract claim. Axis argues that Barracuda should be estopped from enforcing the condition precedents because it never insistent that Fusion comply with them. "To successfully invoke estoppel [Axis] must establish that [Barracuda's] conduct amounted to a representation that was intended to induce a course of conduct on [Fusion's] part and that [it] did reasonably rely on that conduct to [its] detriment." *Dunkin' Donuts Inc.,* 5 F. Supp. 2d at 62. While equitable estoppel "can be based on mere silence, that is true only where there is a duty to speak and the ensuing silence is wrongful [and] misleading." *Id.* Axis, however, has not pointed to any course of conduct Fusion took because of Barracuda's silence. Fusion entered into the HSA with Zoll a mere nine (9) days after executing the OEM Agreement with Barracuda. [Dkt. Nos. 176-11; 12]. Axis has not pointed to any evidence during those few days where Barracuda's wrongful and misleading silence caused Fusion to omit the required clauses set forth in the OEM Agreement from its HSA with Zoll. Without evidence of such conduct, Axis cannot invoke equitable estoppel to prevent Barracuda from enforcing its contractual rights.

---

[10] Barracuda had no right to audit Fusion's contracts with its customers, only Fusion's books and records to determine whether royalty payments were accurate. [Dkt. No. 176-11, ¶ 10]. Barracuda, therefore, could not have discovered the failure to include the appropriate provisions in the HSA.

[11] The cases cited by Axis do not support their position. First, in *KACT, Inc.*, the court found waiver where the plaintiffs "did more than remain silent." *KACT, Inc,* 62 Mass. App. Ct. at 696. Second, in *Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014), the court evaluated the waiver of an arbitration provision and concluded that waiver can occur where the party seeking to arbitrate delays in enforcing the arbitration clause in the face of litigation and the opposing party suffers prejudice. The Supreme Court overruled this holding in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) ("A federal court assessing waiver does not generally ask about prejudice.").

Respectfully submitted,

BARRACUDA NETWORKS, INC,

By their attorneys,

*/s/ Michael R. Stanley*
Joseph L. Demeo (BBO # 561254)
Christopher P. Silva (BBO # 645191)
Michael R. Stanley (BBO# 680957)
DEMEO, LLP
66 Long Wharf
Boston, MA 02110
Tel:  (617) 263-2600
Fax:  (617) 263-2300
jdemeo@demeollp.com
csilva@demeollp.com
mstanley@demeollp.com

May 21, 2024