**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **AXIS INSURANCE COMPANY,** *a/a/o ZOLL* *MEDICAL CORPORATION and ZOLL* *SERVICES LLC, and a/s/o FUSION LLC,* | ) ) ) ) ) |
| **Plaintiff,** | ) ) Civil Action No. ) **20-11997-NMG** |
| **v.** | ) ) |
| **BARRACUDA NETWORKS, INC., and** **SONIAN INC.,** | ) ) ) |
| **Defendants.** | ) ) ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a data breach which compromised certain confidential, protected health information ("PHI") of more than 277,000 patients of Zoll Services LLC, an indirect subsidiary of Zoll Medical (together, "Zoll").  Pending before the Court is the motion of defendants Barracuda Networks, Inc. ("Barracuda") and Sonian, Inc. ("Sonian" and together, "defendants") for judgment on the pleadings (Docket No. 128). For the reasons that follow, the motion will be denied.

I. **Background**

The Court has recited the lengthy and complex background of this action in its prior memoranda and orders of which the parties are undoubtedly well-aware. See Zoll Med. Corp. v. Barracuda Networks, Inc., 585 F. Supp. 3d 128, 133-34 (D. Mass.

-1-

2022); <u>Zoll Med. Corp.</u> v. <u>Barracuda Networks, Inc.</u>, 2021 U.S. Dist. LEXIS 180761 at *2-6 (D. Mass. Sept. 21, 2021).  The Court will therefore address only the factual and procedural background of particular relevance to the pending motion.

### A. Factual Background

Rule 20 plaintiff Fusion, LLC ("Fusion" or "plaintiff") is a company that provides hosted business communications products. In 2012, Apptix, Inc. (now a subsidiary of Fusion) contracted with Sonian (which has merged with Barracuda) to provide its customers with software and related services for the management of customer communications and emails ("the OEM Agreement").[1]  At about the same time, Fusion entered into a Hosting Services Agreement ("the HSA") with Zoll to provide it with hosted communications services.

In November, 2018, a Barracuda employee allegedly left a data port open in its system during a standard migration of data within its network.  In the approximately seven weeks until the error was detected, the PHI of Zoll patients was apparently accessed by unauthorized third parties.  Barracuda advised Fusion of the data breach in January, 2019, although Fusion contends that Barracuda misrepresented the extent of the breach. Fusion also alleges that Barracuda misrepresented that its data

---

[1] Although plaintiff does not define "OEM," the Court understands that it generally refers to "original equipment manufacturer."

-2-

management enabled customers 1) to identify and reduce risks and 2) to provide "reasonable and readily available security protocols and products."

**B.  Procedural Background**

In June, 2019, Fusion filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. A reorganization plan was confirmed in January, 2020.

The plan allowed Zoll to seek damages from Fusion for harm suffered as a result of the data breach "to the extent of available insurance coverage and proceeds."

Zoll initiated arbitration with Fusion in March, 2020, asserting claims for negligence and breach of contract.  Zoll also attempted to assert claims against Barracuda which were dismissed for lack of privity.  Zoll's insurer, Ace American Insurance Co. ("Ace"), paid Zoll on its claims for damages incurred due to the data breach and was subrogated as the real party in interest in the arbitration.  Fusion's insurer, Axis Insurance Co. ("Axis"), confirmed coverage of claims against Fusion related to the data breach and provided a defense against those claims.

In November, 2020, Zoll initiated this action against Barracuda in the District of Massachusetts.  Fusion moved to

intervene as a Rule 20 party shortly thereafter and its motion was allowed in June, 2021.

Zoll, Ace, Fusion and Axis settled the claims at issue in their arbitration in November, 2021.  Pursuant to their settlement, any claims that Zoll/Ace had against Barracuda in connection with the data breach were assigned to Axis and any such claims that Fusion had were subrogated to Axis.  Axis, the remaining real party in interest in the case at bar, was substituted as the plaintiff in April, 2022, at which time Fusion and Zoll were dismissed as parties.

Now, Barracuda moves for judgment on the pleadings principally contending that Fusion's claims should be estopped.


## II.  **Motion for Judgment on the Pleadings**

### A. Legal Standard

A motion for judgment on the pleadings is governed by the same legal standard as a motion to dismiss for failure to state a claim except that the Court considers the pleadings as a whole. Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 54-55 (1st Cir. 2006).

To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

-4-

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).  The Court may also consider documents if 1) the parties do not dispute their authenticity, 2) they are "central to the plaintiffs' claim" or 3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

**B. Analysis**

The motion is suffused with equitable concerns.  Defendants move for judgment on the pleadings based on judicial estoppel. They contend that the failure of plaintiff to disclose the claims in the instant case in its 2019 bankruptcy proceeding constitutes an assertion that those claims do not exist and thus, are barred by judicial estoppel.

Plaintiff rejoins that defendants have been unscrupulous themselves in disclosing necessary information, namely, that they failed to cite estoppel among the affirmative defenses in their answer or raise estoppel in their motion to dismiss.  That oversight, according to plaintiff, constitutes a prejudicial surprise and contravenes the obligation under Fed. R. Civ. P. 8(c)(1) to state all affirmative defenses, including estoppel.

## 1. Subject-Matter Jurisdiction

Before addressing the competing equities, the Court is obliged to respond to defendant's assertion that judicial estoppel is not waivable when it relates to subject matter jurisdiction.  Defendants are correct that "subject-matter jurisdiction cannot be waived or created by acquiescence," see Sexual Minorities Uganda v. Lively, 899 F.3d 24, 34 (1st Cir. 2018), but that does not mean that all estoppel defenses negate subject-matter jurisdiction.

In Lively, for example, judicial estoppel was invoked to prevent plaintiff from contradicting his assertion in prior litigation that diversity jurisdiction was wanting. Id.  By contrast, the purported contradictory assertion at issue concerns the existence of the claim itself, not the Court's subject matter jurisdiction.  Accordingly, the Court will consider whether defendants waived the judicial estoppel defense by failing to include it in their answer.

-6-

### 2. Fed. R. Civ. P. 8(c)

Rule 8(c) is intended to provide both the Court and the parties fair warning that a line of defense will be pursued. <u>See Williams</u> v. <u>Ashland Engineering Co., Inc.</u>, 45 F.3d 588, 593 (1st Cir. 1995).  There is no dispute that the defense of judicial estoppel is among the defenses that must be affirmatively pled under Rule 8(c)(1) or that Barracuda's answer did not specifically do so.  <u>See</u> Fed. R. Civ. P. 8(c)(1) (listing estoppel among affirmative defenses); <u>see also</u> <u>Rivera-Puig</u> v. <u>Garcia-Rosario</u>, 983 F.2d 311, 319 n.12 (1st Cir. 1992).

Nonetheless, general pleadings may, under some circumstances, preserve an affirmative defense. <u>See</u> <u>Williams</u>, 45 F.3d at 593.  Here, defendants contend that their general pleading that plaintiff failed to state a claim, in context, provided sufficient notice of their judicial estoppel defense. To determine whether that pleading suffices, the Court will assess whether plaintiff was unfairly surprised or prejudiced by the defense, under the totality of the circumstances. <u>See</u> <u>id</u>.

Defendants first gave notice of the judicial estoppel defense via email in August, 2023, two months before it filed the instant motion.  That notice came long after its motion to dismiss Fusion's Rule 20 complaint was filed in June, 2021 and the complaint was answered in February, 2022.

-7-

The delay carried well into discovery, which itself was delayed several times due to the protracted dispute over the archived emails and the subsequent motions to compel, quash and for a protective order.  Two weeks after defendant filed its motion for judgment on the pleadings, the Court extended discovery for the final time to January, 2024.  Accordingly, the 18-month delay in staging the judicial estoppel defense came at the end of an already-extended discovery period.

Defendants contend that their general pleading that plaintiff failed to state a claim sufficed to state the judicial estoppel defense and that they "contextualized" that pleading with their August, 2023 email which gave specific notice of the judicial estoppel defense.  The Court disagrees.  The complaint itself mentioned the bankruptcy proceedings, which form the basis of the judicial estoppel defense, in only two paragraphs. Those paragraphs provided mere background and did not relate to the core allegations in the complaint.  There is little reason to believe that plaintiff would have "clearly anticipate[d]" that a judicial estoppel defense would be litigated. See Williams, 45 F.3d at 593.  Accordingly, the delay constituted an unfair surprise.

The Court also finds that the delay resulted in prejudice to plaintiff.  In determining the degree of prejudice for a delayed defense, courts often look to the underlying fact-

intensiveness of the defense.  See Collision Commc'n, Inc. v.
Nokia Solutions & Networks OY, 2024 WL 531289, at * 4 (D.N.H.
Feb. 9, 2024).  Where an affirmative defense is primarily fact-
based, a "plaintiff is more likely to be prejudiced by an
untimely assertion of the defense."  Id.

Plaintiff contends that the delay prejudiced its ability to
conduct discovery on the estoppel defense, including for
example, whether defendants were aware of plaintiff's claim
during the bankruptcy proceedings.  Defendants insist that the
delay was not prejudicial because discovery of its earlier
knowledge of the claims is irrelevant.  There is, according to
defendants, no obligation to prove harm to the party asserting
judicial estoppel.

Enforcement of judicial estoppel depends upon the facts.
There are two baseline facts that must be ascertained to stage a
judicial estoppel defense: 1) facts concerning how a pending
assertion "directly" contradicts a prior assertion and 2)
whether the earlier assertion was adopted by the tribunal.  See
Howell v. Town of Leyden, 335 F. Supp. 2d 248, 250-51 (D. Mass.
2004).  The contours of the judicial estoppel doctrine, however,
"are hazy, and there is no mechanical test for determining its
applicability."  Alternative Sys. Concepts, Inc. v. Synopsys,
Inc. 374 F.3d 23, 33 (1st Cir. 2004).  Indeed, judicial estoppel
is an equitable doctrine "invoked by a court at its discretion."

-9-

New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citation
omitted).  Accordingly, principles of fairness, such as whether
a party received an unfair advantage as a result of the
inconsistent positions, frequently factor into the analysis. See
Alternative Sys. Concepts, Inc., 374 F.3d at 33.

Here, the delay was prejudicial to plaintiff's ability to
develop facts relevant to the judicial estoppel inquiry.  For
example, the delay impeded the development of facts concerning
plaintiff's contention that its reservation of claims arising
from its assumed executory contracts put defendants on notice.
Whether defendants were aware of plaintiff's claims during the
bankruptcy proceedings is relevant to the oft-considered factor
of whether the party asserting inconsistent positions would gain
an unfair advantage and whether a litigant is "playing fast and
loose with the courts."  In re Buscone, 61 F.4th 10, 22 (1st
Cir. 2023).

Plaintiff has not, however, had a substantive opportunity
to develop those other facts that may counsel against estoppel
even if defendants are able to establish conclusively the two
baseline factors.  Courts are not compelled to apply judicial
estoppel every time a party takes seemingly contradictory
positions. See, e.g., In re Buscone, 61 F.4th 10, 26 (1st Cir.
2023) (holding that the bankruptcy court's denial of summary
judgment where defendant "demonstrated the minimum requirements

-10-

of judicial estoppel" was reasonable as "further factual development will better inform the ultimate decision.").  The substantial and unexplained delay in staging the judicial estoppel defense has prejudiced plaintiff's ability to respond to the defense in contravention of Rule 8(c).  The motion for judgment on the pleadings will be denied.

**ORDER**

For the foregoing reasons, the motion of defendants, Barracuda Networks, Inc. and Sonian Inc. (Docket No. 128), is **DENIED.**

**So ordered.**

  /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  July 17, 2024