**United States District Court**

**District of Massachusetts**

| | |
|---|---|
| AXIS INSURANCE COMPANY | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. |
| | )   20-11997-NMG |
| BARRACUDA NETWORKS, INC. et al. | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a 2018 data breach that compromised the protected health information of more than 277,000 patients of Zoll Services LLC, a subsidiary of Zoll Medical (together, "Zoll").  Pending before the Court is the motion of defendant Barracuda Network, Inc. ("Barracuda") for summary judgment on three claims, which survived a motion to dismiss, brought by plaintiff Axis Insurance Co. ("Axis"), as assignee of Zoll and subrogee of Fusion LLC ("Fusion").  For the reasons that follow, the motion will be allowed.

## I.   **Background**

This Court has recited the lengthy and complex background of this action in its prior memoranda and orders. See, e.g.,

Axis Ins. Co. v. Barracuda Networks, Inc., No. CV 20-11997-NMG,
2024 WL 3458143, at *1 (D. Mass. July 17, 2024); Axis Ins. Co.
v. Barracuda Networks, Inc., No. CV 20-11997-NMG, 2023 WL
2838380, at *1-*2 (D. Mass. Apr. 7, 2023).  The following
addresses only the background relevant to the pending motion.

### A. Factual Background

Fusion sells hosted business communications products.  In
2012, a company that is now a subsidiary of Fusion entered into
an Original Equipment Manufacturer ("OEM") agreement with a
company that has since merged with Barracuda.  The OEM agreement
provided for customer communications and email management
software and related services.  At approximately the same time,
Fusion entered a Hosting Services Agreement ("HSA") with Zoll
that would provide Zoll with cloud-based messaging software and
services for electronic messages and email communications.

In 2018, a Barracuda employee allegedly left a data port in
its system open during a standard data migration in its network.
In the approximately seven weeks before the error was detected,
protected health information ("PHI") from Zoll patients was
apparently accessed by unauthorized third parties.  In early
2019, Barracuda advised Fusion of the breach, although Fusion
claims Barracuda misrepresented its magnitude and the prior

existence of "reasonable and readily available security protocols and products."

**B. Procedural Background**

In 2020, Zoll filed an action against Barracuda in this Court, asserting claims for negligence, breach of implied warranties, breach of contract, and equitable indemnification. Fusion was allowed to intervene in this case under Fed. R. Civ. P. 20 and proceeded to bring actions for breach of contract, breach of the covenant of good faith, negligent misrepresentation, tortious interference and equitable indemnification.  In a previous order, the Court dismissed all of those claims except Zoll's claim of equitable indemnification and Fusion's claims of breach of contract and breach of the covenant of good faith.

Pursuant to a previous arbitration settlement, any claims Zoll and Fusion had against Barracuda in connection with the data breach were assigned to Axis.  Axis, the only remaining party in interest, was substituted as plaintiff in 2022, at which time Fusion and Zoll were dismissed as parties.

Now, Barracuda moves for summary judgment against Axis under Fed. R. Civ. P. 56 on the three remaining claims.

III. **Motion for Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment is warranted where "there is no genuine issue as to any material fact" and thus "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is "material" if it "is one that affects the outcome of the suit," id. at 48; see Patco Constr. Co. v. People's United Bank, 683 F.3d 197, 207 (1st Cir. 2012), and a "genuine issue" exists as to that material fact if "there is sufficient evidence supporting the claimed factual dispute," Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). For a claim to survive summary judgment, the plaintiff must provide a sufficient evidentiary basis to establish each essential element of the claims at issue. Katz v. Belveron Real Est. Partners, LLC, 28 F.4th 300, 307 (1st Cir. 2022).

### A. Equitable Indemnification

Barracuda first asserts that Zoll's equitable indemnification claim fails as a matter of law because Zoll lacks a "special relationship" with Barracuda and, alternatively, because Zoll is a party at fault and therefore lacks "clean hands" to seek equitable indemnification.

A valid claim of indemnification can arise under Massachusetts law in one of three circumstances: 1) where there

is an express contractual agreement to indemnify, 2) where an agreement to indemnify can be "implied from the nature of the relationship between the parties," or 3) where there is "a tort based right to indemnification" based on "a great disparity in the fault of the parties." Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1, 2 (1st Cir. 1982). The claim at issue concerns only the third circumstance, a tort-based, or equitable, right of indemnification.

Equitable indemnification allows a party "who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of the loss." Santos v. Chrysler Corp., 715 N.E.2d 47, 62 (Mass. 1999).  An equitable indemnification claim does not require proof of a contractual relationship between the parties. Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 479 N.E.2d 1386, 1388 (Mass. 1985).  Instead, it arises under equitable principals and is available where there is a "derivative or vicarious relationship" between the indemnitor and indemnitee. Santos, 715 N.E.2d at 62; see Wade v. Touchdown Realty Grp., LLC, 386 F. Supp. 3d 56, 67 (D. Mass. 2019) ("[T]he right to indemnity is limited to those cases where the person . . . is held derivatively or vicariously liable for the wrongful act of another." (emphasis omitted) (quoting Ferreira

v. Chrysler Grp. LLC, 13 N.E.3d 561, 567 (Mass. 2014)).[1]
Derivative or vicarious liability can emerge only "because of
the relationship between the two parties." Chapman v. Finnegan,
950 F. Supp. 2d 285, 292 n.4 (D. Mass. 2013).

Here, nothing in the record suggests that Zoll and
Barracuda shared any relationship recognized under Massachusetts
law as giving rise to derivative or vicarious liability.  The
relationship at issue between Zoll and Barracuda can best be
described as one of an independent contractor.  As Barracuda
contends, the OEM agreement between the parties established that
Zoll operated as an independent contractor, not as an agent.
While not dispositive, the inclusion of a provision that a party
is an independent contractor is significant evidence that the
parties' relationship is as such.  See Theos & Sons, Inc. v.
Mack Trucks, Inc., 729 N.E.2d 1113, 1120 (Mass. 2000).  Axis
makes no claim that Zoll was anything more than an independent
contractor to Barracuda.

Barracuda's status as an independent contractor with
respect to Zoll fails to create derivative or vicarious
liability to those with whom Barracuda contracts.  See Lyon v.

---

[1] Contrary to Barracuda's assertion, an equitable
indemnification claim does not require a "special relationship"
between the parties to be actionable.  Cf. Arujo, 693 F.2d at 3.
(requiring "special relationship between the parties" for
"implied contract" indemnification claim); Decker v. Black &
Decker Mfg. Co., 449 N.E.2d 641, 643 (Mass. 1983) (same).

Morphew, 678 N.E.2d 1306, 1310 (Mass. 1997) ("In general, an employer of an independent contractor is not liable for harm caused to another by the independent contractor's negligence."); see also Decker, 449 N.E.2d at 643 (holding that relationship between manufacturer and supplier of equipment does not give rise to vicarious or derivative liability necessary for equitable indemnification claim).  Axis makes no claim that derivative liability exists here even in spite of the independent contract status. Cf. Lyon, 678 N.E.2d at 1310 (stating independent contractor status can give rise to derivative liability where there is evidence of employer control over independent contractor).

Axis likewise does not contend that Barracuda shared with Zoll any other form of recognized relationship that would create the derivative or vicarious liability necessary for a viable equitable indemnification claim. See Leonard v. Lumbermens Mut. Cas. Co., 10 N.E.2d 469, 470 (Mass. 1937) (recognizing existence of derivative liability based on agency relationship); see also Hollywood Barbecue Co. v. Morse, 50 N.E.2d 55, 56 (Mass. 1943) (recognizing derivative liability arising from master-servant relationship); Tenedios v. Wm. Filene's Sons Co., 20 Mass. App. Ct. 252, 257, 479 N.E.2d 723, 727 (1985) (recognizing derivative liability based on employer and employee relationship); accord McGuire v. Reilly, 271 F. Supp. 2d 335, 342 (D. Mass. 2003),

aff'd, 386 F.3d 45 (1st Cir. 2004) (stressing that summary judgment is "appropriate" where "the nonmoving party fails to show the existence of a genuine issue of material fact" in record).

Because the absence of a relationship that would legally give rise to vicarious or derivative liability negates Axis's equitable indemnification claim, the Court need not address Barracuda's argument that Axis cannot recover because Zoll lacked "clean hands."[2]  While the Court previously determined that Zoll had sufficiently pled that its fault was "vicarious in nature" at the motion to dismiss stage, Zoll Med. Corp. v. Barracuda Networks, Inc., 565 F. Supp. 3d 101, 110 (D. Mass. 2021), the absence of evidence of such a relationship that would give rise to vicarious or derivative liability at the summary judgment stage is dispositive.  See Chapman v. Bernard's Inc., 198 F.R.D. 575, 579 (D. Mass. 2001) (allowing summary judgment on equitable indemnification claim because would-be indemnitor

_____

[2] The Court recognizes that sources conflict as to whether Massachusetts law requires a party be without fault before claiming equitable indemnification or simply be less culpable than the indemnitor. Compare Stewart v. Roy Bros. Inc., 265 N.E.2d 357, 365 (Mass. 1970) (holding that equitable indemnification is available only where indemnitee "does not join in the negligent act"), with Rathbun v. W. Mass. Elec. Co., 395 Mass. 361, 364, 479 N.E.2d 1383, 1385 (1985) (finding no "general rule" as to whether negligent indemnitee can recover and noting that some prior cases have allowed negligent indemnitee to prevail).

was "not an agent of [indemnitee], nor d[id] it have a
relationship . . . from which it could be held vicariously or
derivatively liable for the actions of [indemnitor]" and
therefore [indemnitee] was "not entitled to indemnification from
[indemnitor] under any circumstances."); see also Walter &
Shuffain, P.C. v. CPA Mut. Ins. Co. of Am. Risk Retention Grp.,
660 F. Supp. 2d 116, 126 (D. Mass. 2009) (dismissing equitable
indemnification claim because nonmoving party "ha[d] not alleged
any facts establishing a relationship . . . that would give rise
to vicarious or derivative liability").

**B. Breach of Contract**

Barracuda next contends that Fusion's breach of contract
claim fails as a matter of law because Axis cannot prove that
Barracuda waived the conditions precedent in the OEM agreement,
which this Court previously determined Fusion failed to fulfill.
One such condition required Fusion to include limitation of
liability and indemnification provisions in its customer
contracts.

Under Massachusetts law, a contractual condition precedent
is "an event [that] must occur before a contract becomes
effective or before an obligation to perform arises." Sands v.
Ridefilm Corp., 212 F.3d 657, 661-62 (1st Cir. 2000).  If a
condition precedent is not satisfied, the contract and the

obligations therein cannot be enforced.  Mass. Mun. Wholesale
Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 288 (Mass. 1991).

It is well settled that conditions precedent can be waived.
See Millen Indus., Inc. v. Flexo-Accessories Co., 5 F. Supp. 2d
72, 74 (D. Mass. 1998) ("A condition precedent in favor of one
of the parties may be waived by that party.").  Waiver occurs
when a party voluntarily relinquishes a known right.  Bos.
Helicopter Charter, Inc. v. Augusta Aviation Corp., 767 F. Supp.
363, 372 (D. Mass. 1991).  A waiver is voluntary if the party
either expressly or impliedly manifests intent to surrender a
right and no other reasonable explanation exists for that
surrender, which requires "clear, decisive and unequivocal
conduct." Bachoroz v. Miller-Forslund, 703 F.3d 27, 32-33 (1st
Cir. 2012); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec.
Co., 840 F.2d 985, 992 (1st Cir. 1988) (emphasis omitted).
Silence, generally, is insufficient to support waiver. Dunkin'
Donuts Inc. v. Panagakos, 5 F. Supp. 2d 57, 61 (D. Mass. 1998).

Determining "[w]hether a condition precedent has been
waived" is usually "a question of fact."  Millen Indus., Inc., 5
F. Supp. 2d at 74; see Wildlands Tr. of Se. Mass., Inc. v. Cedar
Hill Retreat Ctr., Inc., 160 N.E.3d 297, 305 n.12 (Mass. App.
Ct. 2020).  Here, the facts are clear that the subject OEM
agreement contains an anti-waiver provision stating that

> No failure or delay of [Barracuda] in exercising any right
> or remedy under this [OEM a]greement shall operate as a
> waiver of such right.

Although this provision may serve as evidence that inaction by Barracuda does not constitute waiver, the existence of an anti-waiver provision under Massachusetts law is "not dispositive," and it remains a question of fact whether waiver has in fact occurred.  Wildlands, 160 N.E.3d at 305 n.12.[3]

Barracuda contends that no evidence demonstrates a clear and unequivocal intent to waive the OEM's condition precedent to overcome this operative provision.  Axis posits that Barracuda has failed to act on its right to audit Fusion's customer contracts, a right it claims Barracuda held under the terms of the OEM agreement.  Silence alone does not, however, preclude Barracuda from summary judgment on this claim. See Dunkin' Donuts Inc., 5 F. Supp. 2d at 61 ("[I]t is doubtful that mere silence could satisfy [the] burden of establishing clear, decisive, and unequivocal conduct." (internal quotations omitted)); cf. KACT, Inc. v. Rubin, 819 N.E.2d 610, 616 (Mass.

---

[3] A previous session of this Court treated anti-waiver clauses as determinative to preventing waiver, see Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, 477 F. Supp. 2d 366, 374 (D. Mass. 2007), but this session disagrees with that conclusion based upon controlling Massachusetts case law, see M.J.G. Properties, Inc. v. Hurley, 537 N.E.2d 165, 167 (Mass. App. Ct. 1989) ("[W]e think the proper approach, and one which is in accord with our cases, is to look at the question of waiver as a question of fact in light of all the circumstances, including the existence of the anti[-]waiver clause.").

App. Ct. 2004) (finding waiver where party "did more than remain silent").  Without more, evidence of Barracuda's inaction and lack of inquiry as to its rights under the condition is insufficient to raise a dispute of fact as to whether Barracuda's conduct showed a clear, unequivocal intent to waive.  Cf. J.H. Lynch & Sons, Inc. v. Shaw's Supermarkets, Inc., No. CV 05-12445-JGD, 2008 WL 11388729, at *8 (D. Mass. Feb. 15, 2008) (finding allegations of waiver sufficient to survive summary judgment where evidence showed party actively approved payment agreements despite condition precedent to the contrary).

Nevertheless, Axis claims Barracuda cannot rely on waiver to defeat the breach of contract claim under the doctrine of equitable estoppel, based on Barracuda's failure to inquire about whether Fusion was in compliance.  To invoke equitable estoppel, Axis must establish that Barracuda made a representation that was intended to induce a course of conduct by Fusion and that Fusion did reasonably rely on that conduct to its detriment.  Dunkin' Donuts Inc., 5 F. Supp. 2d at 62 ("Although estoppel can be based on mere silence, that is true only where there is a duty to speak . . . .").  Axis, however, has not shown that Barracuda was duty-bound to inquire whether Fusion was complying with the condition precedent rather than remain silent.  Thus, the failure to inquire is not grounds for equitable estoppel.

**C. Breach of Covenant**

Finally, Barracuda claims Axis is unable to prove its claim of breach of the covenant of good faith and fair dealing because it impermissibly seeks to expand Barracuda's obligations under the contract.

Every contract governed under Massachusetts law contains an implied covenant of good faith and fair dealing. Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 683 (Mass. 2005).  That covenant reflects an implicit condition that neither party "shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Galvin v. U.S. Bank Nat. Ass'n, No. CIV.A. 14-14723, 2015 WL 1014549, at *4 (D. Mass. Mar. 9, 2015) (citing Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806 (Mass. 1991)), aff'd sub nom. Galvin v. U.S. Bank, N.A., 852 F.3d 146 (1st Cir. 2017)).  To show breach of covenant, a plaintiff must demonstrate that "there existed an enforceable contract between the two parties" and "the defendant did something that had the effect of destroying . . . the right of [the plaintiff] to receive the fruits of the contract." Laser Labs, Inc. v. ETL Testing Lab'ys, Inc., 29 F. Supp. 2d 21, 24 (D. Mass. 1998) (internal quotations omitted).  Thus, the covenant cannot be used to "create rights and duties not otherwise provided for in the existing contractual relationship." Ayash, 822 N.E.2d at 684

(quotations omitted); see MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) ("The concept of good faith is shaped by the nature of the contractual relationship and the scope of the covenant is only as broad as the contract . . . ." (quotations omitted)).

Allegations that a party breached the covenant of good faith and fair dealing is "ordinarily a question of fact to be determined by the jury." Wilder v. Toyota Fin. Servs. Americas Corp., 764 F. Supp. 2d 249, 259 (D. Mass. 2011). This case, however, presents an exception. Because the covenant of good faith cannot be used to create rights that do not exist in the contractual relationship, see Ayash, 822 N.E.2d at 684, Axis must demonstrate some contractual right to which Fusion is entitled in the event of a data breach. No evidence of such was produced during discovery. As Barracuda articulates, its OEM agreement with Fusion contains no provision regarding any actions that must be taken in response to a data breach.[4] As such, Axis cannot rely on an implied duty of good faith to create a new obligation where one does not exist under the terms of their agreement. See Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 62 (1st Cir. 2001) (holding that defendant did not violate covenant of good faith by failing to provide notice of a

---

[4]  By contrast, Fusion's agreement with Zoll contains detailed language concerning such events.

stock split because defendant was "not contractually bound to provide the appellant with individualized notice of the stock split").

That the breach of covenant claim rests mainly on Barracuda's alleged inaction further demonstrates why the claim cannot survive a motion for summary judgment.  Inaction constitutes "a lack of good faith . . . only when the contracting party had a duty to act," and no such duty exists under this agreement.  Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 965 (D. Mass. 2004).  In response, Axis makes no attempt to refute Barracuda's argument, and Barracuda is therefore entitled to summary judgment on this claim.  See Boyle v. Douglas Dynamics, LLC, 292 F. Supp. 2d 198, 210 (D. Mass. 2003), aff'd, 99 F. App'x 243 (1st Cir. 2004) (rejecting breach of covenant claim where party "did not have an enforceable right" in question under agreement); see also Piantes v. Pepperidge Farm, Inc., 875 F. Supp. 929, 938 (D. Mass. 1995) (rejecting breach of covenant claim because contract did not provide plaintiff franchise distributor with right through which to assert breach of good faith and fair dealing.

**ORDER**

For the foregoing reasons, the motion of defendant,

Barracuda Networks, Inc., for summary judgment is **ALLOWED.**

**So ordered.**

<u>  /s/ Nathaniel M. Gorton        </u>
Nathaniel M. Gorton
United States District Judge

Dated:  September 9, 2024